UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ERNEL CHAMBERS,

Petitioner,

v.                                                    CAUSE NO. 3:26-CV-281-CCB-SJF

BRIAN ENGLISH,

Respondent.

## OPINION AND ORDER

Immigration detainee Ernel Chambers, representing himself, filed a petition for a

writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in

violation of the laws or Constitution of the United States. ECF 1. The respondent has

answered the petition, and Chambers has filed a reply. ECF 7, ECF 8. The petition is

ready to be decided.

## BACKGROUND

Chambers was ordered removed to Dominica[1] on June 12, 2014, due to a criminal

conviction. ECF 7-1 at 36. Immigration and Customs Enforcement (ICE) first released

Chambers on an Order of Supervision on September 10, 2014. *Id.* A letter from the

Dominica consulate to an ICE officer, dated October 13, 2014, indicates that Dominica

needed more information about the location of Chambers' passport before it would

---

[1] The court clarifies that it refers to the Commonwealth of Dominica rather than the Dominican Republic.

issue travel documents. *Id.* at 47. On December 21, 2017, ICE detained Chambers but released him on the same day on an Order of Supervision. *Id.* at 36.

On October 22, 2025, ICE detained Chambers again. *Id.* at 34. He signed a notice of revocation of release on October 22, 2025. *Id.* at 42-43. He also received an initial informal interview that allowed him to respond to the reasons for revocation. *Id.* at 41.He is now at the Miami Correctional Facility. ECF 1. Since December 31, 2025, he has been unable to obtain information regarding his removal despite multiple communications with ICE officials. ECF 8. Most recently, on February 16, 2026, an ICE official told him, "[he's] booked for a flight in 30 days to leave the United States."[2] *Id.*

The respondent also provides a declaration from an ICE official, attesting that the ICE Field Office in Chicago "prepared a travel document request and mailed it to the Dominica Consulate in New York on February 20, 2026." ECF 7-2 at 3. On March 9, 2026, the respondent filed a status report representing that he expected Chambers to be removed to Dominica within thirty days. ECF 6.

## SUBJECT MATTER JURISDICTION

The respondent first argues that the court lacks subject matter jurisdiction over Chambers' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Vu v. English*, No. 3:25CV999 DRL-SJF, 2026 WL 194171, 2-3 (N.D. Ind. Jan. 26, 2026) (Leichty, J.)

---

[2] Given that Chambers filed his reply brief from the Miami Correctional Facility on March 24, 2026, Chambers did not leave the United States on March 18, 2026, as this hearsay statement suggests.

(discussing § 1252(b)(9) and § 1252(g)); *see also Kem v. Noem*, No. 3:25-CV-997-DRL-SJF, 2026 WL 100566, at *1 (N.D. Ind. Jan. 14, 2026) (Leichty, J.) (discussing § 1252(g)); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)), *appeal docketed* No. 26-1404 (7th Cir. Mar. 2, 2026).

## MERITS

The respondent first argues that Chambers' detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[3] which for Chambers ended twelve years ago, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility

---

[3] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Here, Chambers' immediate period of detention spans only five months. However, ICE detained him following an order of removal for three months from June 2014 until September 2014. The court has determined that six-month period applies cumulatively across initial and subsequent periods of detention. *Guan v. Bondi*, No. 3:26-CV-192-CCB-SJF, 2026 WL 772417, at *2 (N.D. Ind. Mar. 19, 2026). Because Chambers' cumulative time in detention exceeds six months, the court turns to whether his removal is reasonably foreseeable.

The respondent identifies Dominica as the only country under consideration for removal. The record indicates that ICE detained him on two prior occasions. First, ICE detained him on June 12, 2014, and released him on September 10, 2014. Though the government did not remove Chambers to Dominica in 2014, correspondence from the Dominica consulate suggests that Dominica was willing to issue travel documents for Chambers once it obtained more information about the location of Chambers' then-unexpired Dominica passport. Moreover, the existence of the passport itself also demonstrates Dominica's general willingness to issue travel documents to Chambers.

4

ICE also detained Chambers for a single day in 2017, but that detention was too brief to suggest any substantial attempt to remove Chambers.

The length of Chambers' current detention and his unsuccessful efforts to obtain information about his removal from ICE officials raise some question regarding the likelihood of removal, but the respondent adequately rebuts this showing by demonstrating that the government mailed a travel document request to the Dominica consulate on February 20, 2026. It remains unclear why the government needed to detain Chambers for four months before submitting a travel document request, but the request has been pending for only one month. The court finds no suggestion in the record that Dominica would not issue travel documents within the reasonably foreseeable future. Therefore, the court cannot grant Chambers' habeas relief on the basis that his removal is not reasonably foreseeable.

Next, Chambers argues that he is entitled to habeas relief because he did not receive a letter notifying him of the revocation of his supervision and because he did not have an opportunity to speak with an ICE official to contest his revocation. However, the respondent filed documentation to the contrary, and Chambers offers no rebuttal. Consequently, the court finds that this argument is not a basis for habeas relief.

Finally, Chambers argues that he is entitled to habeas relief because he did not receive a 90-day custody review. The government revoked Chambers' supervised release pursuant to 8 C.F.R. § 241.13(i)(2). According to that provision, "if the alien is not released from custody following the informal interview. . . , the provisions of § 241.4 shall govern the alien's continued detention pending removal." While the reference to

Section 241.4 is somewhat ambiguous, Chambers' notice of revocation of release reads as follows: "If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice." ECF 7-1 at 42. This statement tracks the language of 8 C.F.R. § 241.4(l)(3), which states in relevant part:

> *Timing of review when release is revoked.* If the alien is not released from custody following the informal interview . . . , the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody . . . has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually . . . .

"[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").

Plainly, Chambers was not released after his initial informal interview. As a result, the regulations suggest that the government should initiate a normal review process. Neither party represents that the normal review process has been initiated. Further, the court expressly ordered the respondent to provide "the date of the informal interview and any other custody reviews following Ernel Chambers' re-detention and

6

documentation from those matters," and the respondent provided no evidence that a normal review process has been initiated. ECF 3.

Nevertheless, the court cannot find that the government has violated federal regulations by failing to initiate a normal review process by now. The issue is that the regulations set no firm deadline for normal review processes but instead say that the initial steps are "ordinarily be expected to occur within approximately three months after release is revoked." This language is both uncertain and aspirational, so the court cannot reasonably characterize it as setting a firm deadline for the initiation of the normal review process.[4] It follows that the court cannot find that the government has failed to comply with its regulations by not yet initiating the normal review process after five months of re-detention, which is not substantially longer than "approximately three months."

Moreover, for Chambers, the purpose of a normal review process would be to demonstrate no significant likelihood of removal within the reasonably foreseeable future. *See* 8 C.F.R. § 341.13(i)(2) ("The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."). The court has now determined that there is a significant likelihood of removal within the reasonably foreseeable future, so the failure

---

[4] This language also stands in contrast to the regulatory language on the timing of other revocation procedures. For example, the regulations state that the notice of the reasons for revocation must be provided "upon revocation," which is neither uncertain nor aspirational. 8 C.F.R. § 241.13(i)(3). It also states that an initial informal interview must be given "promptly after his or her return to Service custody." *Id.* While this language is somewhat uncertain, it is not aspirational.

to initiate a normal review process at this time is harmless error. Therefore, this claim is not a basis for habeas relief. No other claims remain, so the court will deny the habeas petition.

As a final matter, the court observes that "for detention to remain reasonable, as the period of prior post-removal-order confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). While Chambers may not be entitled to habeas relief now, it does not prevent him from seeking habeas relief at some later date if the government continues to detain him for a significant period of time.

For these reasons, the court **DENIES** the habeas petition (ECF 1) and **DIRECTS** the clerk to close this case.

SO ORDERED on March 26, 2026.

        /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT